[Cite as *Thompson v. Lyndhurst*, 2019-Ohio-3277.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

TIFFANY THOMPSON,                          :

    Plaintiff-Appellant,          :

                    No. 107695

    v.                             :

CITY OF LYNDHURST, ET AL.,                 :

    Defendants-Appellees.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 15, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-885688

---

### *Appearances:*

Fred D. Middleton, *for appellant.*

Mazanec, Raskin & Ryder, Co., L.P.A., James A. Climer, and Frank H. Scialdone, *for appellees* city of Lyndhurst and Michael Scipione.

Barbara A. Langhenry, city of Cleveland Director of Law, and Mark V. Webber, Chief Assistant Director of Law, and Amanda M. Boutton, Assistant Director of Law, *for appellees* city of Cleveland, Hernando Harge, and Robert Davis.

LARRY A. JONES, SR., J.:

{¶ 1} Plaintiff-appellant Tiffany Thompson ("Thompson") appeals from the trial court's August 2018 decision that granted summary judgment in favor of defendants-appellees the city of Lyndhurst, Lyndhurst detective Michael Scipione ("Detective Scipione"), the city of Cleveland, and city of Cleveland employees Hernando Harge ("Harge") (chief of human resources of the public utilities department), and Robert Davis (director of the public utilities department). For the reasons that follow, we affirm the trial court's decision.

**Factual and Procedural History**

{¶ 2} During the course of these proceedings, the appellees deposed Thompson. Her deposition testimony established that in 2012, Thompson began working for the city of Cleveland's department of public utilities, division of water. She worked as a customer service representative and part of her duties included handling customer billing and payments. Thompson testified that she was part of the city's union and subject to the union's collective bargaining agreement ("CBA").

{¶ 3} She admitted that prior to the facts giving rise to this case, she was subjected to disciplinary action by the city on two occasions, once for an accusation that she improperly took a customer's credit card information and the other time for an accusation that she improperly billed a customer. She was represented by a union representative for at least one of the disciplinary proceedings.

{¶ 4} Thompson was also twice subjected to disciplinary proceedings because of the city's allegation against her of excessive tardiness. She was represented by a union representative for those proceedings as well.

{¶ 5} The Lyndhurst detective who was named as a defendant in this case, Detective Scipione, was also deposed. He testified that in November 2014, he took a report regarding a theft of $1,000 to $2,000 from an elderly person's checking account. During the course of his investigation, Detective Scipione learned that a man by the name of Montrea Donaldson ("Donaldson") was involved in a fraudulent check scheme; he had allegedly been using fraudulent checks to pay utility bills for some of his "clients."

{¶ 6} One of Donaldson's utility bill clients provided the detective with the telephone number that he used to contact Donaldson. Detective Scipione called the number and Thompson answered the phone. Thompson agreed to meet the detective at the Lyndhurst police department.

{¶ 7} The meeting between Detective Scipione and Thompson took place on November 10, 2014. Thompson told the detective that she knew of Donaldson's history of using fraudulent checks and that he had previously been to prison for check fraud, but she denied having any involvement in any fraudulent scheme. She also denied having any knowledge of Donaldson's specific whereabouts.

{¶ 8} During the course of the meeting, the detective learned that Thompson allowed Donaldson to use her cell phone and her car (a grey Honda Civic) on several occasions, which the detective testified coincided with the times when the

fraudulent transactions occurred; he also learned that Thompson worked at the city of Cleveland water department. Detective Scipione further learned that Donaldson and Thompson have a child together. The detective testified that by the end of his meeting with Thompson, he had doubts about her credibility.

{¶ 9} Two days after Detective Scipione's meeting with Thompson, he met with another one of Donaldson's clients. This client told the detective that Donaldson had previously paid his gas bill. Donaldson had also attempted to pay the client's water bill, but the payment was rejected by the water department. The client told Detective Scipione that when he met Donaldson, he was driving a grey Honda Civic with a child's car seat in the back and a water department sticker in the window.

{¶ 10} The client told the detective that the mother of Donaldson's child owned the vehicle and also that she worked for the water department. According to the client, Donaldson relied on this woman to help him get water bills paid. Donaldson told the client, "I got some people that work down at the water company."

{¶ 11} Detective Scipione attempted to talk to Donaldson, but Donaldson refused. The detective submitted an affidavit for Thompson's arrest to the judge of the Lyndhurst Municipal Court. The judge issued an arrest warrant for Thompson.

{¶ 12} On May 1, 2015, Thompson was arrested by Bratenahl police. The case was bound over from the Lyndhurst Municipal Court to the Cuyahoga County Court of Common Pleas; Detective Scipione testified before the grand jury. The grand jury returned a "true bill" against Thompson for theft, misuse of a credit card,

and forgery. *See* Case No. CR-15-595540-A. The case was dismissed by the state in November 2015.

{¶ 13} Prior to the dismissal of the first case, the Cuyahoga County Prosecutor's Office attempted to get another indictment against Thompson, along with Donaldson (despite Thompson already being under indictment); the grand jury "no billed" the second indictment as to Thompson. *See* Case No. CR-15-596736-A.

{¶ 14} The city of Cleveland became aware of the charges against Thompson, and in June 2015, after a predisciplinary hearing, the city suspended her from her job pending resolution of the charges. In November 2015, the prosecutor's office dismissed the initial indictment against Thompson without prejudice. The record is not clear as to the reason for the dismissal. In January 2016, after verifying that no charges were pending against Thompson, the city sent Thompson a letter stating that she could potentially return to her position, with back pay, if she completed the "return-to-work process," which included completing some paperwork and submitting to drug and alcohol testing.

{¶ 15} In February 2016, prior to completion of the return-to-work process, a "Tiffany J. Thompson" was arrested and charged with theft. The city contends that person is the appellant here. Thompson, on the other hand, contends that it was not her — her middle initial is "N." not "J." The city scheduled a predisciplinary hearing for February 23, 2016; Thompson failed to appear, however. A union representative appeared on her behalf and advocated for her; the city again placed Thompson on administrative suspension. Another disciplinary hearing was held in August 2017.

Thompson was present, and prior to the hearing, the city provided her with all the documentation that it would be considering in determining its course of action. On September 8, 2017, the city terminated Thompson's employment.

{¶ 16} Thompson filed the within action in the court of common pleas. She asserted claims for (1) malicious prosecution and false arrest against Detective Scipione and the city of Lyndhurst; (2) "broken promises" against the city of Cleveland and Harge based on their failure to return her to her position once her criminal case was resolved; (3) violation of public policy; and (4) breach of contract and implied contract against the city of Cleveland.

{¶ 17} In March 2018, the city of Cleveland defendants filed a motion to dismiss. In April 2018, Thompson filed a motion to stay the proceedings "pending the results of the arbitration of the matter before the collective bargaining agreement with the city of Cleveland." According to Thompson's motion, the "terms of the CBA were not involved during that period [the first suspension], since she was offered reinstatement with full pay during her time of suspension." Rather, the "right to grieve and arbitrate the suspension of employment did not arise until the second period of suspension started in 2016."

{¶ 18} The Cleveland defendants submitted deposition testimony in support of their motion to dismiss, and the trial court converted the motion to a motion for summary judgment. The Lyndhurst defendants also filed a motion for summary judgment. The court granted the defendants' motions, as to all claims and all

parties.  Thompson now appeals, raising the following four assignments of error for

our review:

> I.      City of Cleveland violated the rights of plaintiff for employment
> in violation of public policy when it presented "sealed criminal
> records" in violation of R.C. 2953.321 and records of another
> person to support her termination of employment.
>
> II.     City of Cleveland promised to reinstate the employee with back
> pay upon dismissal of the criminal charges but failed to honor
> their contract.
>
> III.    The city of Cleveland used privileged and "sealed records" to
> support the wrongful termination of plaintiff in violation of
> USC 29 Section 1983 and the Ohio Constitution.
>
> IV.     The police officer does not have qualified immunity for actions
> that amount to violations of 42 USC Sec. 1983 when they are
> actions of unlawful detention, malicious prosecution, and abuse
> of process.

**Law and Analysis**

**Summary Judgment Standard**

{¶ 19}  An appellate court reviews an award of summary judgment de novo.

*Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  We apply

the same standard as the trial court, viewing the facts in the case in a light most

favorable to the nonmoving party and resolving any doubt in favor of the nonmoving

party.  *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12, 467 N.E.2d 1378 (6th

Dist.1983).

{¶ 20} Pursuant to Civ.R. 56(C), summary judgment is proper if:  (1) no

genuine issue as to any material fact remains to be litigated; (2) the moving party is

entitled to judgment as a matter of law; and (3) it appears from the evidence that

reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *See also Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶ 21} To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). The nonmoving party must then present evidence that some issue of material fact remains for the trial court to resolve. *Id.*

{¶ 22} With the above mentioned standard in mind, we now consider the trial court's decision to grant summary judgment in favor of the defendants.

**City of Cleveland Defendants**

{¶ 23} The city's Human Resources Policies contain the following provisions for employees who are charged with a criminal offense:

A.  Policy Statement

All employees are obligated to report charges and convictions. City employees charged with a crime are subject to administrative charges for violations of city procedures whether the misconduct occurred on or off-duty. Administrative charges shall be preferred and held in abeyance pending resolution of the criminal proceeding.

B.  Felony Charges

An employee charged with a felony shall be suspended without pay pending the adjudication of the criminal charges. The Appointing Authority may within his/her discretion allow the employee to continue working either in a limited or regular capacity if the

Appointing Authority determines that the charge does not effect [sic] the employee's job duties.

* * *

F. Upon adjudication of the criminal charges the pre-disciplinary hearing shall be reconvened. The City reserves the right to amend any administrative charges. The Appointing Authority shall adjudicate the administrative charges.

Any employee who has been suspended without pay pending adjudication of criminal charges, and who has been subsequently found not guilty of the charges, may request reimbursement for the time of the suspension. However, the employee is not guaranteed reimbursement for the time on suspension. Whether any reimbursement is awarded will depend on the resolution of the administrative charges, and the facts in each case.

{¶ 24} In addition to criminal charges, the following conduct can also be grounds under the city's HR policies for disciplinary action: conduct unbecoming of an employee in the public service; disorderly, immoral, or unethical conduct while on duty; negligent, improper or inefficient handling or accounting for public funds or accounts, or violation of any department rule or regulation respecting the handling or accounting for public funds or accounts; and for other failure of good behavior that is detrimental to the service, or for any other act of misfeasance, malfeasance, or nonfeasance in office.

{¶ 25} The governing CBA defines a grievance as "a dispute or difference between the City and employee(s) or the City and the Union concerning the interpretation and/or application of and/or compliance with any provision(s) of this Contract, including any and all disciplinary actions." The CBA provides that grievances involving termination or wage disputes are permitted to be escalated up

to Step 3. If the grievance is not resolved at Step 3, the CBA states that the only available option is to submit the dispute to final and binding arbitration within 30 calendar days. The CBA specifically states that the arbitrator has the authority to resolve "disputes arising out of grievances as to the interpretation and/or application and/or compliance with the provisions of the [CBA], including any and all disciplinary actions."

**Public Policy, Statutory, and Constitutional Violations Allegation**

{¶ 26} As mentioned, one of the claims for relief in Thompson's complaint was based on a violation of public policy. The claim constituted Count 3 of her complaint and the substantive portion of it reads in its entirety as follows: "The conduct of defendant is further in violation of Ohio Public Policy for which Plaintiff is entitled to relief as prayed for herein." Count 1 of her complaint was relative to the city of Lyndhurst and Detective Scipione, and Count 2 of her complaint was relative to the city of Cleveland and human resources employee Harge for breaking their promise of returning her to work with back pay. Count 4 alleged breach of contract and implied contract against the city of Cleveland defendants based on their failure to give Thompson back pay. Her complaint is completely devoid of any reference to any Ohio Revised Code section, federal statutory section, or section of the United States or Ohio Constitutions.

{¶ 27} Thus, it was not clear which defendant or defendants Count 3 was in reference to. Moreover, the allegation was insufficient as to what action Thompson was claiming was in violation of public policy.

{¶ 28} In her first assignment of error, Thompson contends that the city of Cleveland violated her rights in violation of public policy and R.C. 2953.321. In her third assignment of error she contends that the city of Cleveland used privileged and sealed records in violation of 42 U.S.C. 1983 and the Ohio Constitution to support her wrongful termination. As mentioned, Thompson did not plead violations of any Ohio or federal statutory or constitutional violations.

{¶ 29} Ohio is a notice-pleading state. *See* Civ.R. 8(A)(1). Under the notice-pleading requirements of Civ.R. 8(A)(1), the plaintiff need only plead sufficient, operative facts to support recovery under his or her claims. *Doe v. Robinson*, 6th Dist. Lucas No. 1-07-1051, 2007-Ohio-5746, ¶ 17. Nevertheless, to constitute fair notice, the complaint must still allege sufficient underlying facts that relate to and support the alleged claim, and may not simply state legal conclusions. *See DeVore v. Mut. of Omaha Ins. Co.*, 32 Ohio App.2d 36, 38, 288 N.E.2d 202 (7th Dist.1972).

{¶ 30} Even given the low pleading standard, Thompson's complaint failed to plead what public policy and which statutory and constitutional provisions were violated. A review of the record shows that Thompson cursorily mentioned R.C. 2953.321, governing "disposition and use of investigatory work product" and R.C. 2953.32, governing "sealing of record of conviction or bail forfeiture" in her brief in opposition to the city of Cleveland's motion to dismiss and motion for summary judgment. Relative to the city of Cleveland defendants, Thompson made no mention whatsoever of constitutional provisions (federal or state) or federal statutes in any of her pleadings.

**{¶ 31}** It is well established that a party cannot raise for the first time on appeal arguments that he or she failed to raise in the trial court below. *See, e.g., Kleinfeld v. Huntington Natl. Bank*, 8th Dist. Cuyahoga No. 90916, 2008-Ohio-6486, ¶ 37. The contentions Thompson wishes us to consider in her first and third assignments of error were not pled in her complaint and therefore were not properly raised below. On this record, the first and third assignments of error are overruled.

**Breach of Contract and Implied Contract**

**{¶ 32}** In her second assignment of error, Thompson contends that the city breached its employment contract with her by failing to reinstate her with back pay after the first criminal case was dismissed. In granting the city's motion to dismiss/motion for summary judgment, the trial court found that it lacked subject-matter jurisdiction because Thompson's claims were subject to the CBA. We agree.

**{¶ 33}** At deposition, Thompson admitted that her employment with the city was governed by the CBA. R.C. Chapter 4117 governs public employees' collective bargaining agreements, and provides a "comprehensive statutory scheme for collective bargaining for public employees," by setting forth "very specific rights and duties for public employers, public employees, and their unions in making such agreements. It also sets out the remedies for enforcing those rights and duties." *Johnson v. Ohio Council Eight*, 146 Ohio App.3d 348, 352, 766 N.E.2d 189 (8th Dist.2001).

**{¶ 34}** Under R.C. 4117.10(A), if a public employee's collective bargaining agreement provides for final and binding arbitration of grievances, then the subject

parties are "subject solely to that grievance procedure * * *." Thus, "where a collective bargaining agreement provides for final and binding arbitration of grievances, the Public Employees Collective Bargaining Act, R.C. 4117.01 et seq., precludes an employee from seeking redress beyond the grievance process." *Hall v. Cleveland Dept. of Pub. Util.*, 8th Dist. Cuyahoga No. 82034, 2003-Ohio-1964, ¶ 10.

{¶ 35} In addition to admitting that she was subject to the CBA, Thompson also admitted that she failed to exhaust her administrative remedies before filing this action. "If a labor contract sets forth a grievance procedure to be used in resolving disputes between an employer and an employee, common pleas courts have no subject-matter jurisdiction unless the procedures are exhausted." *Id.* at ¶ 9.

{¶ 36} In light of the above, none of Thompson's claims here can be successfully maintained against the city of Cleveland. And to the extent that she maintains that her claims were statutory rights independent of the CBA, we are not persuaded. Although it is true that Ohio courts have held that there are some statutory rights that are distinctive from collective bargaining agreements, and which result in claims that are "independent of the arbitration process," that is inapplicable here. *Haynes v. Ohio Turnpike Comm.*, 177 Ohio App.3d 1, 2008-Ohio-133, 893 N.E.2d 850, ¶ 20 (8th Dist.).

{¶ 37} As already discussed, Thompson's complaint does not allege any independent statutory claim. Therefore, the CBA was her sole remedy for asserting claims against the city of Cleveland defendants and the trial court lacked subject-matter jurisdiction.

{¶ 38} In light of the above, the second assignment of error is overruled.

{¶ 39} We now consider the remaining fourth assignment of error, which is relative to the city of Lyndhurst defendants.

**City of Lyndhurst Defendants**

{¶ 40} For her assigned error relative to the Lyndhurst defendants (the city and Detective Scipione), Thompson claims that they did not have immunity for violations of 42 U.S.C. 1983 against her claims of unlawful detention, malicious prosecution, and abuse of process.

{¶ 41} As with the city of Cleveland defendants, Thompson failed to plead a violation of 42 U.S.C. 1983 against the Lyndhurst defendants. That notwithstanding, they are immune.

{¶ 42} The Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744, grants presumptive immunity to political subdivisions. Under R.C. 2744.01(F), the city of Lyndhurst is a political subdivision. The city was therefore entitled to broad immunity under R.C. 2744.02(A)(1). In order for the city to have lost its immunity in this case, Thompson would have had to establish an exception to the city's immunity under R.C. 2744.02(B)(1)-(5). Those exceptions are as follows: (1) the negligent operation of a motor vehicle by an employee; (2) the negligent performance of proprietary functions; (3) the negligent failure to keep public roads open and in repair; (4) the negligence of employees occurring within or on the grounds of certain buildings used in connection with the performance of

governmental functions and due to physical defects; and (5) an express imposition of liability.

{¶ 43} Thompson failed to establish that any of the exceptions apply to this case, and we determine that none do. She contends that the federal and state constitutions create an exception to governmental immunity. However, "[n]either general constitutional guarantees nor congressional action, for example, remove the general grant of immunity to political subdivisions under R.C. 2744.02(B)(5)." *Bonkoski v. Lorain Cty.*, 9th Dist. Lorain Nos. 17CA011094, 17CA011120, 17CA011122, 2018-Ohio-2540, ¶ 9, citing *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities*, 102 Ohio St.3d 230, 2004-Ohio-2629, 809 N.E.2d 2, ¶ 20-26.

{¶ 44} In light of the above, the city of Lyndhurst was entitled to immunity and the trial court properly granted summary judgment in its favor on this basis.

{¶ 45} We now consider Thompson's claims as they related to Detective Scipione. Relying on the fact that the first case against her was dismissed, Thompson contends that Detective Scipione's prosecution of her was malicious. Law enforcement officials are cloaked with immunity under R.C. 2744.03(A)(6), however, subject to the following exceptions:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist

under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

{¶ 46} Thompson contends that Detective Scipione acted with malicious purpose, in bad faith, or in a wanton or reckless manner. According to Thompson, Detective Scipione's statements during his interview of her demonstrate that there was no evidence of her involvement in Donaldson's criminal activities.

{¶ 47} Upon review, Thompson has failed to demonstrate that Detective Scipione's techniques were malicious, in bad faith, or used in a wanton or reckless manner. The detective testified that he used "interview techniques" to attempt to elicit additional information from Thompson. Moreover, Detective Scipione did not rely solely on Thompson's interview in obtaining an arrest warrant. Rather, Thompson was tied to Donaldson via the other witnesses the detective interviewed. The evidence gathered by Detective Scipione was presented to a judge who reviewed the material and determined that probable cause existed to issue an arrest warrant.

{¶ 48} Additionally, the investigation was reviewed by a grand jury who rendered a true bill. We are not persuaded by Thompson's contention — for which she fails to rely on any legal authority — that the second grand jury's no bill invalidated the first indictment. We are also not persuaded by Thompson's contention that in regard to the first indictment, the state reviewed the case and found the evidence insufficient to go to trial on. The case was dismissed without

prejudice, but there simply is no evidence in the record as to why. And relevant to this case, neither Detective Scipione nor the city of Lyndhurst had any role in the county prosecutor's decision to dismiss the case.

**{¶ 49}** On this record, there is no evidence that Detective Scipione acted with malicious purpose, in bad faith, or in a wanton or reckless manner. The trial court properly granted summary judgment in his favor and against Thompson.

**{¶ 50}** In light of the above, the trial court properly granted summary judgment in favor of the defendants on all claims.

**{¶ 51}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

EILEEN T. GALLAGHER, P.J., and
MARY J. BOYLE, J., CONCUR