[Cite as *Greco v. Cleveland Browns Football Co., L.L.C.*, 2020-Ohio-4745.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOHN GRECO, ET AL.,         :

      Plaintiffs-Appellees,    :

                              No. 108991

      v.                     :

CLEVELAND BROWNS FOOTBALL    :
COMPANY, L.L.C.,

      Defendant-Appellant.    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 1, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-18-897089, CV-18-897091, CV-18-897092,
CV-18-897093, CV-18-897094, and CV-18-897096

---

### *Appearances:*

Garson Johnson L.L.C., Stuart I. Garson, Jeffrey D.
Johnson, and Grace A. Szubski; Kedir Law Offices L.L.C.,
and Shaun H. Kedir, *for appellee.*

Fisher & Phillips, L.L.P., Daniel P. O'Brien, Scott W.
Gedeon, and Jerry P. Cline, *for appellant.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Defendant-appellant Cleveland Browns Football Company, LLC (the "Browns") appeal the trial court's decision denying summary judgment in its favor

and granting summary judgment in favor of the plaintiffs-appellees, John Greco, Joel Bitonio, and Scott Solomon, former Browns players (the "players"). We affirm the trial court's decision.

## I.     Facts and Procedural History

{¶ 2}   The players were injured while playing football for the Browns. The players were treated by two medical doctors, Drs. James Voos ("Dr. Voos") and Michael Salata ("Dr. Salata") (collectively, the "doctors"), who were employed through University Hospitals, but hired by the Browns to provide treatment to the players. Under an agreement between the Browns and University Hospitals, Dr. Voos and Dr. Salata agreed to provide medical services to all Browns' employees and act as their in-house physicians. University Hospitals agreed to pay the doctors' salaries in exchange for the right to use the Browns' trademark name for marketing and promotional purposes.

{¶ 3}   As a result of their injuries, the players filed six workers' compensation claims with the Ohio Bureau of Workers' Compensation ("BWC") under R.C. 4123.512. The Browns rejected all six of the claims, stating that the players' claims were time-barred under R.C. 4123.84(A)(3) because they were filed after the two-year statute of limitations. In a hearing held on February 6, 2018, the Industrial Commission of Ohio ("ICO") allowed all six claims. The ICO is an agency within the BWC that steps in when BWC claims are disputed. The Browns argued that the tolling exception under R.C. 4123.84(A)(3) does not apply in this matter because the doctors were not employed by the Browns, and were instead,

independent contractors. The staff hearing officers ("SHOs") of the ICO found that the players timely filed their self-insured claims. The SHOs also addressed the meaning of "employ" under R.C. 4123.84, and found the term ambiguous and subject to more than one legal interpretation. As a result, the SHOs interpreted the term "employ" in favor of the injured players, as required under R.C. 4123.95. As a result of the ICO's decision, the Browns appealed the decision to the Cuyahoga County Common Pleas Court, arguing that the players' claims were not timely filed under R.C. 4123.84(A).

{¶ 4} In May 2019, both parties filed motions for summary judgment. The Browns contend that the tolling statute did not apply, and that the players' workers' compensation claims were time-barred because the doctors are independent contractors and therefore, not in the employ of the Browns. The players contend that the tolling statute did apply, and that their claims were timely. Both parties agreed that the players received treatment from the doctors within two years of injury, and that the injuries occurred during the course and scope of the players' employment with the Browns. The issue between the two parties is whether the tolling provisions of R.C. 4123.84(A)(3) apply to the players' self-insured claims.

{¶ 5} In August 2019, the trial court granted summary judgment in favor of the players and against the Browns. After a nunc pro tunc entry, correcting the original journal entry,[1] the trial court issued its ruling, stating, in part,

---

[1] The trial court incorrectly stated in its original journal entry that summary judgment was granted in favor of the defendants, the Browns. The trial court issued a nunc

[t]he court having considered all the evidence and having construed the evidence most strongly in favor of the non-moving party, determines that reasonable minds can come to but one conclusion, that there are no genuine issues of material fact, and that plaintiff-appellees are entitled to judgment as a matter of law as this court finds that the tolling provisions of R.C. 4123.84(A)(3) apply to the plaintiff-appellees' self-insured claims. Summary judgment is therefore entered in favor of plaintiff-appellees and against defendant-appellant.

Journal entry No. 11025307 (Sept. 6, 2019).

{¶ 6} On September 19, 2019, the trial court granted a joint motion to consolidate all six of the cases. After the trial court's decision, the Browns filed this timely appeal assigning one error for our review:

   I.    The trial court erred in denying defendant-appellant's motion for summary judgment and granting plaintiff-appellee's motion for summary judgment.

## II. Summary Judgment

### A. Standard of Review

{¶ 7} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998).

{¶ 8} "We apply the same standard as the trial court, viewing the facts in the case in a light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party." *Thompson v. Lyndhurst*, 8th Dist. Cuyahoga

---

pro tunc, correcting the journal entry, stating that summary judgment was granted in favor of the plaintiffs.

No. 107695, 2019-Ohio-3277, ¶ 19, citing *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12, 467 N.E.2d 1378 (6th Dist.1983).

{¶ 9} Summary judgment shall not be rendered unless the moving party demonstrates that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, with the nonmoving party being entitled to have the evidence construed most strongly in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).

> The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). The moving party has the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Id.* After the moving party has satisfied this initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that there is a genuine issue of material fact. *Id.*

## B. Law and Analysis

{¶ 10} The Browns identified four issues they want this court to address:

(1) The term "in the employ of an employer[,]" as set forth in R.C. 4123.84(A)(3)(a) means a traditional, common-law employer-employees relationship and does not mean an independent contractor relationship;

(2) The NFL Collective Bargaining Agreement does not create an employer-employee relationship between the clubs and the team physicians;

(3) The independent contractor agreements at issue herein do not establish an employer-employee relationship between Dr. Voos, Dr. Salata, and the Browns, and;

(4) There is no Civil Rule 56 evidence that the Browns made a payment to, or on behalf of, players for a hospital bill, a medical bill, to a licensed physician or hospital, or an orthopedic or prosthetic device pursuant to R.C. 4123.84(A)(3)(a), 4123.84(A)(3) and 4123.84(F).

We will answer these four issues jointly.

{¶ 11} The Browns argue that because the team physicians[2] were considered independent contractors, they were not in the employ of the Browns, as defined in R.C. 4123.84(A)(3)(a), which states,

[i]n all cases of injury or death, claims for compensation or benefits for the specific part or parts of the body injured shall be forever barred unless, within one year after the injury or death:

(3) In the event the employer is a self-insuring employer, one of the following has occurred:

(a) Written or facsimile notice of the specific part or parts of the body claimed to have been injured has been given to the commission or bureau or the employer has furnished treatment by a licensed physician in the employ of an employer, provided, however, that the furnishing of such treatment shall not constitute a recognition of a claim as compensable, but shall do no more than satisfy the requirements of this section.

{¶ 12} The Browns further argue that the phrase "employ of an employer" does not apply to independent contractors. The Browns cite *Walters v. Americab*, 118 Ohio App.3d 180, 692 N.E.2d 234 (8th Dist.1997), and *Bostic v. Connor*, 37 Ohio

---

[2] "The doctors," "team physicians," or "physicians" are used interchangeably herein.

St.3d 144, 524 N.E.2d 881 (1988), where the Ohio Supreme Court rejected claimants' argument that they were employees and determined that although each were injured while working they were not eligible for workers' compensation because they were independent contractors or not in employ of the employer.

{¶ 13} In *Walters*, John Walters was a taxi cab driver. Americab leased taxi cabs to its drivers. Walters signed a contract acknowledging his status as an independent contractor and his ineligibility for state workers' compensation benefits and federal and state unemployment. Walters also acknowledged responsibility for paying his own income taxes. *Walters* at 183. However, Walters argued that he was an employee of Americab because they exerted control over his driving. Americab controlled what taxis would be driven, set the length of shifts, rates to be charges, dress code, and code of conduct. *Id.* at 183.

{¶ 14} The Ohio Supreme Court rejected Walters' argument stating that Walters "had total control over the days and hours he worked." Additionally, per Walters's affidavit, he was permitted to choose shifts, starting and stopping times, he could refuse fares within the bounds of the law, he was not obligated to accept a fare from Americab's dispatchers, he kept all his money earned, and was under no duty to report his earnings. The court stated that Americab's work rules did not "exert a degree of control over [Walters's] driving to the point where they direct the manner or means of driving." *Id.* at 183. Additionally, unlike the doctors in the present case, Walters signed an agreement acknowledging his status as an

independent contractor and had control of the manner and means of his employment.

{¶ 15} In *Bostic*, the question of whether someone was an employee or an independent contractor was at issue. There was substantial evidence submitted by Bostic's heir that he was possibly an employee of Connor on the day of his death. The trial court denied Connor's motion for summary judgment determining that there was an issue of fact to be determined by a jury, and the Sixth District affirmed the trial court's judgment. *Bostic v. Connor*, 6th Dist. Lucas No. L-86-112, 1987 Ohio App. LEXIS 5547 (Jan. 16, 1987). The Supreme Court stated "the key factual determination is who had the right to control the manner or means of doing the work." *Id.* at 146. The court went on to state:

> The determination of who has the right to control must be made by examining the individual facts of each case. The factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes travelled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts.

(Internal citations omitted.) *Id.*

{¶ 16} The Supreme Court affirmed the appellate court's determination that the trial court did not err when it denied Connor's motion for summary judgment. *Id.* at 147. Unlike *Bostic*, in this case, there is no dispute regarding the facts.

{¶ 17} We find that the Browns' reliance on *Bostic* and *Walters* are not determinative in this case. We look to the National Football League's ("NFL")

collective bargaining agreement ("CBA") with the NFL's Player's Association. Through the CBA, both the NFL teams and players agreed to be bound by specific terms and conditions, and Article 39 of the CBA governs the Player's Rights to Medical Care and Treatment. We also look at how the courts have historically defined independent contractors versus employees.

{¶ 18} In *Billman v. Massillon Dev. Group, LLC*, 5th Dist. Stark No. 2007-CA-00169, 2008-Ohio-287, the court states,

> [i]n *Gillum v. Industrial Commission*, 141 Ohio St. 373, 48 N.E.2d 234 (1943), the Ohio Supreme Court set forth the test to determine whether a person is an independent contractor or an employee. If the employer reserves the right to control the manner or means of doing the work, the worker is an employee, whereas if the worker controls the manner or means of doing the work, or if the worker is responsible to the employer only for the result, the worker is an independent contractor. *Gillum*, syllabus by the court, paragraph 2. In *Bostic v. Connor*, 37 Ohio St. 3d 144, 524 N.E.2d 881 (1988), supra, the Ohio Supreme Court found the question of employee or independent contractor must be determined upon the individual facts of each case. The court set out various factors, including, but not limited to: who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes traveled; the length of the employment; the type of business; the method of payment; and any pertinent agreements or contracts.

*Id.* at ¶ 11.

{¶ 19} Using the standard set forth in *Gillum*, we must determine if the Browns reserved the right to control the manner or means of the physicians' work, in order to classify them as employees or independent contractors. The agreement between the Browns and physicians mandated and required that the physicians "disclose to a player any and all information about the player's physical condition

that the physician may from time to time provide to a coach or other Club representative, whether or not such information affects the player's performance or health." The Browns argue that simply requiring the physicians to communicate with the team about the medical records of each player does not mean that the Browns controlled the manner and means of the physicians' work. However, in addition to required communication, the Browns required the physicians to participate in the conduct of physical examinations for each player; review the players' test results, lab reports, x-rays, MRI's, CT scans, and any other diagnostic test films; visit the training facility with such frequency as the Browns deemed necessary for consultations with the athletic trainers, coaches, and management; and examine and treat players for orthopedic related conditions.

{¶ 20} In addition, the Browns required the doctors to be on call during the entire football season, visit the training facility during hours mandated by the Browns, and attend scouting events, meetings, and all training camp sessions. The Browns supplied the doctors with an office and all necessary medical equipment and tools required for their job. The employment contract extended for five years with an option to extend for an additional five years.

{¶ 21} The Workers' Compensation statute, R.C. 4123.01(A)(1)(b) states, in part:

"Employee" means: Every person in the service of any person, firm, or private corporation, including any public service corporation, that (i) employs one or more persons regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written.

{¶ 22} The facts reveal that the doctors were in the service of the Browns, a private corporation, which employs one or more people regularly in the medical business under a contract of hire. The evidence shows that the Browns controlled the manner and means of the physicians' work through the CBA and contract between the doctors. Additionally, in this case the facts are not in dispute. "Generally, where the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor is a matter of law to be decided by the court. *See Schickling v. Post Publishing Co.* (1927), 115 Ohio St. 589, 155 N.E. 143, syllabus." *Bostic*, 37 Ohio St.3d at 146, 524 N.E.2d 881. As a result, we find that the trial court did not err.

{¶ 23} Next, we must look to the NFL's CBA with the NFL's Player's Association. According to CBA, Article 39, Section 1(a), it states, in part: "Each Club[3] will have a board-certified orthopedic surgeon as one of its Club physicians, and all other physicians retained by a Club to treat players shall be board-certified in their field of medical expertise." Additionally, each team is responsible for paying for the cost of the medical services for the players. Article 39, Section 1(C), states, in part: "The cost of medical services rendered by Club physicians will be the responsibility of the respective Clubs, but each Club physician's primary duty in providing player medical care shall be not to the Club but instead to the player-

---

[3] "Club" or "Team" or "Member," used interchangeably herein, means any entity that is a member of the NFL or operates a franchise in the NFL at any time.

patient." The CBA mandates that each team is responsible for paying the cost of medical services for the players. Although the Browns argue that they did not pay the doctors, as the doctors received their salary from University Hospitals, the Browns entered into an agreement with University Hospitals where the hospital would have the right to use the Browns' trademark name for marketing and promotional purposes in lieu of the doctors' salaries.

{¶ 24} It is not disputed by the Browns or the players that the agreement between the hospital and the Browns to pay for the doctors' services with trademark, advertising, and marketing rights qualify as legal payment. However, the Browns claim that R.C. 4123.84(A)(3)(b) only applies if the Browns paid for a specific injury for the purposes of notice to a self-insured employer. The Browns further argue that if they paid a doctor bill for a specific injury, the players would be on notice for a possible workers' compensation claim. The players argue that the tolling exception applies when a self-insured employer has paid or furnished benefits, which includes the payment of self-insuring employer to, or on behalf of, an employee, for a medical bill for treatment. The players argue that the Browns paid and furnished benefits to the players in lieu of medical bills under the CBA, and that these payments satisfy the tolling requirements under R.C. 4123.84.

{¶ 25} R.C. 4123.84(A)(3)(a) and 4123.84(A)(3)(b), the portions of the statute at issue, state,

> (A) In all cases of injury or death, claims for compensation or benefits for the specific part or parts of the body injured shall be forever barred unless, within one year after the injury or death:

(3)  In the event the employer is a self-insuring employer, one of the following has occurred:

(a)  Written or facsimile notice of the specific part or parts of the body claimed to have been injured has been given to the commission or bureau or the employer has furnished treatment by a licensed physician in the employ of an employer, provided, however, that the furnishing of such treatment shall not constitute a recognition of a claim as compensable, but shall do no more than satisfy the requirements of this section;

(b)  Compensation or benefits have been paid or furnished equal to or greater than is provided for in sections 4123.52, 4123.55 to 4123.62, and 4123.64 to 4123.67 of the Revised Code.

{¶ 26} According to the record, the Browns provided medical treatment to the players through the doctors, whose manner and means of work were controlled by the Browns.  The Browns' compensation was the use of their trademark for marketing.  According to the CBA, each team is responsible for paying for the cost of the medical services for the players.  Thus, we find that these payments satisfy the tolling requirements under R.C. 4123.84.

{¶ 27} Therefore, the Browns' sole assignment of error is overruled, because we find that the trial court did not err in granting summary judgment to the players.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, SR., J., CONCUR